UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

RICHARD WILLIAM SKYERS,

                    Plaintiff,

     - against -                              12 Civ. 3432
                                              OPINION

UNITED STATES OF AMERICA, FEDERAL
BUREAU OF PRISONS, J.M. KILLIAN,
WARDEN-F.C.I. OTISVILLE, DR. SOMMERS,
P.A. AUMICK,

                    Defendants.

----------------------------------------X



A P P E A R A N C E S:


          RICHARD WILLIAM SKYERS
          Pro se



          Attorneys for Defedendants

          PREET BHARARA
          United States Attorney for the
          Southern District of New York
          86 Chambers Street
          New York, NY 10007
          By:  Rebecca S. Tinio, Esq.

**Sweet, D.J.**

Defendants the United States of America (the "United States"), Federal Bureau of Prisons ("BOP"), Janice M. Killian ("Killian"), Diane Sommer, M.D. ("Dr. Sommer"), and Dennis Aumick ("Aumick") (collectively, the "Defendants") have moved to dismiss the complaint (the "Complaint") of pro se plaintiff Richard William Skyers ("Skyers" or the "Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Based upon the conclusions set forth below, the Defendants' motion is granted without prejudice.

## I. Prior Proceedings

Plaintiff, currently an inmate at the Federal Correctional Institution ("FCI") in Otisville, New York, filed his pro se Complaint on May 23, 2012. He brings this action against the United States; the BOP; Killian, the former warden of FCI; Dr. Sommer, the clinical director at FCI; and Aumick, a former emergency medical technician and paramedic at FCI. The Complaint alleges that Plaintiff developed a wound on his left hand in January 2010, and that Defendants did not timely treat

1

his condition, resulting in nerve damage and limited use of his hand.

Defendants filed the instant motion to dismiss on November 16, 2012, which Plaintiff opposed on December 14, 2012. The motion was marked fully submitted on January 7, 2013.

## II.  **Background**

The following factual background is drawn from the Complaint and from documents referenced in or integral to the Complaint as submitted by the parties.  The allegations of the Complaint are accepted as true for the purposes of this motion, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), and do not constitute findings of fact by the Court.

Plaintiff's Allegations as to His Medical Treatment

On January 1, 2010, while residing in the special housing unit ("SHU") in FCI Otisville, Plaintiff noticed a small lesion on his left hand which he reported to the medical staff. (Compl. at Doc. 1, 3 of 58).  Plaintiff spoke with Aumick about his hand a few days later.  (Id.).  Aumick allegedly "took notes and left," and also "stated that he was busy giving out

2

medication" when Plaintiff asked Aumick to examine him. (Id.).
Plaintiff alleges that over the next few days, his hand began to
swell and that he suffered pain.  (Id.).  According to the
Plaintiff, despite his numerous complaints, the FCI medical
staff, in particular Dr. Sommer, did not examine him and "never
came through."  (Id.).

       According to the Complaint, Plaintiff began receiving
antibiotic treatment of Sulfamethoxozole 800 mg/160mg on January
14, 2010.  (Id. at 4 of 58).  On January 16, 2010, Plaintiff was
told that Dr. Sommer had prescribed Acetaminophen with codeine
for his pain.  (Id.).  However, Dr. Sommer still "never once
came to the SHU to see [Plaintiff] about [his] hand."  (Id.).
The following day, Aumick, along with two officers from FCI,
took Plaintiff from his cell "into an open area."  (Id.).
According to the Plaintiff, Aumick cut into the middle of
Plaintiff's palm in an attempt to release the "abscess."  (Id.).
Defendants contend that Aumick was attempting to treat
Plaintiff's wound directly.  Plaintiff alleges that Aumick then
called Dr. Sommer, and Plaintiff was taken to an emergency room
at Horton Hospital for further treatment. (Id.).

       According to the Complaint, the emergency room's
medical staff told Plaintiff that prison staff had been giving

                              3

him "the wrong medication." (Id.).  The medical staff of Horton
Hospital recommended that Plaintiff see a plastic surgeon at
Westchester Medical Center ("Westchester Medical").  (Id.).  The
Plaintiff underwent surgery and several days of treatment in the
local hospital before returning to FCI on January 20, 2010.
(Id. at 5 of 58).  Over the next few days, Plaintiff received
medication twice a day and his bandages were changed throughout
his treatment.  (Id.).

On January 28, 2010, Plaintiff's hand started to swell
again and "got real dark," and he took notes on "how the
dressing changes were being done."  (Id.).  Plaintiff alleges
that he spoke with Defendant Killian to express concern about
his treatment.  (Id.).  On January 30, 2010, Plaintiff was
examined and treated by Dr. Sommer for the first time since the
injury to his hand. (Id.).  Dr. Sommer took the stitches out
from Plaintiff's hand and changed his medication to Clindamycin
300 mg.  (Id.).  After a few days on the new medication,
Plaintiff's hand continued to swell and he reported that he was
in pain.  (Id.).

On February 4, 2010, Plaintiff was taken to
Westchester Medical for a follow-up and was admitted.  (Id. at 6
of 58).  On February 8, 2010, Plaintiff underwent another

surgery.  (Id.).  Plaintiff was then prescribed Vancomycin and
Bactoroban Nasal.  (Id.).  Plaintiff returned to FCI on February
11, 2010 and continued to receive treatment.  The Complaint
appears to suggest that Plaintiff was not given the proper
required medication of Bactoroban over the span of several days.
(Id. at 6 of 58 to 7 of 58).  On March 4, 2010 he was
transferred to the Federal Medical Center ("FMC") at Butner,
North Carolina "for shock therapy – aggressive PT/OT."  (Id. at
7 of 58).  He returned to FCI Otisville in October 2011.  (Id.).


Plaintiff's Medical Records


        The earliest-dated record indicates that on January
15, 2010, Plaintiff was examined by FCI employee Gerard Travers
("Travers").  (Compl. at Doc. 2-1, 19 of 47).  Plaintiff stated
that he had an infection in his hand that had begun "1-2 days"
earlier and reported that the swelling had increased "over the
past few days."  (Id.).  Travers noted that Plaintiff
"appear[ed] to be in no acute distress," and that upon
consultation, Dr. Sommer prescribed the antibiotic Bactrim for
Plaintiff.  (Id.).  The report was co-signed by Dr. Sommer.  (Id.
at 21 of 47).


        The next morning, Travers examined Plaintiff after he

5

again reported that his hand infection had begun only in recent
days.  (Id. at 24 of 47) (noting onset/duration of "3-5 days").
(Id.).  Upon phone consultation, Dr. Sommer prescribed
Acetaminophen with codeine for Plaintiff's pain.  (Id.).  Dr.
Sommer also requested that medical staff be called to treat the
wound.  (Id.).  Later that day, Travers examined Plaintiff
again.  (Id. at 22 of 47).  Although there was no medical staff
immediately available to treat the wound, Travers reported that
Plaintiff had responded well to the pain medication. (Id.).  Dr.
Sommer again prescribed Acetaminophen with codeine.  (Id.).

On the morning of January 17, 2010, Aumick attempted
to treat Plaintiff's wound, which he described as an "abscess to
left hand."  (Id. at 27 of 47).  Aumick attempted an "I and D
[incision and drainage] with needle to relieve pressure" and
noted a "[s]mall amount [of] bright yellow drainage . . . ."
(Id.).  Plaintiff again reported the onset/duration of his wound
to be "3-5 days."  (Id.).  Aumick noted that Plaintiff had been
given antibiotics for the last three days.  (Id.).  Aumick
reported Plaintiff's condition to Dr. Sommer, who ordered that
Plaintiff be taken to an outside hospital for evaluation. (Id.).

Plaintiff was admitted to the Orange Regional Medical
Center that same day.  (Compl. at Doc. 2, at 28 of 58).  The

record of his admission reports that "[a]ccording to the patient, the past Thursday he started having some left hand pain." (Id.).  Plaintiff was then sent to Westchester Medical when it was determined that he should have a surgical procedure. (Id. at 29 of 58, 54 of 58).  The report of Plaintiff's admission to Westchester Medical relays that Plaintiff complained of a "painful mass . . . first noted 4 days back." (Id. at 54 of 58).

    According to the Westchester Medical's Operative Report, physicians performed: (1) drainage of a deep abscess on Plaintiff's left palm, (2) incision of his tendon sheath, and (3) fasciotomy of Plaintiff's palm and carpal tunnel on January 17, 2010. (Id. at 30 of 58).  The report observes that Plaintiff "presented with a one week history of left hand pain." (Id. at 31 of 58).  Plaintiff was discharged from Westchester Medical on January 20, 2010. (Id. at 33 of 58).  The discharge summary notes that Plaintiff had presented with "about a four-day course of increased pain and swelling." (Id.).  The summary also reports that the bacterium MRSA had been found in Plaintiff's wound, and that the bacterium would be sensitive to treatment by antibiotics, including Bactrim. (Id. at 35 of 58). Bactrim, however, was among the medications prescribed for Plaintiff upon his discharge. (Id.; see also id. at 58 of 58).

7

On January 24, 2010 upon Plaintiff's return to FCI
Otisville, Dr. Sommer noted his diagnosis and the prescription
of Bactrim.  (Compl. at Doc. 2-1, at 34 of 47).  Plaintiff
received frequent treatments over the next several days and he
was encouraged by prison medical staff to exercise his left hand
and fingers, although he stated that it was "painful to move
them."  (Id. at 39 of 47).  Aumick advised the Plaintiff that
"if he did not perform range of motion exercises, he would have
more pain, longer recovery and may even lo[se] some function of
them."  Id.

On January 29, 2010, Dr. Sommer examined and treated
Plaintiff.  (Id. at 43 of 47).  Plaintiff complained of
increasing pain and stated that "the wound does not look right."
(Id.).  Plaintiff reported that his thumb felt numb, but that he
was doing the range of motion exercises daily.  (Id.).
Plaintiff's stitches were removed and the wound was cleaned and
dressed.  (Id.).  He also refused to continue taking Tylenol for
his pain, as he stated it was causing him abdominal discomfort.
(Id.).

On February 4, 2010, Plaintiff was sent back to
Westchester Medical.  (Compl. at Doc. 2-2, at 7 of 24; id. at

8

Doc. 2-1, at 16 of 47).  The following day, Dr. Sommer noted
that she had spoken with medical personnel at Westchester
Medical, and they believed that Plaintiff did not have "any
active infection" and that he "does not want to move his
fingers."  (Id. at Doc. 2-2, at 10 of 24).  Personnel at
Westchester Medical placed Plaintiff "in a splint to encourage
movement of his fingers."  (Id.).

        Plaintiff underwent another surgical procedure on
February 8, 2010.  (Id. at Doc. 2, at 38 of 58).  The discharge
summary reports that no "infectious process" was found, and that
Plaintiff's described pain "was consistent more with stiffness
due to limitation from the splint than infectious."  (Id. at 44
of 58; see also id. at 40 of 58, 42 of 58) (also noting that no
infection was found).  Upon his return to FCI on February 11,
2010, Dr. Sommer explained that Plaintiff "must start moving his
fingers despite the pain."  (Id. at Doc. 2-2, at 18 of 24).

        Plaintiff was transferred to FMC Butner in March 2010,
where he continued to receive treatment for his hand.  (Id. at
22 of 24 to 24 of 24; see also id. at Doc. 2, at 20 of 58
(noting Plaintiff's transfer to Butner on March 4, 2010, and his
examination by a neurosurgeon "who suspected entrapment
neuropathy," which "is a complication of the fasciotomey

9

surgery.").

Plaintiff's Administrative Claims

        In early May 2011, Plaintiff began to submit
administrative claims to the BOP, asserting that Dr. Sommer had
improperly refused to provide medical treatment to him and had
prescribed the wrong medication for his wound.  First, Plaintiff
submitted a request for informal resolution ("BP-8") of his
complaints.  (Compl. at Doc. 2, at 22 of 58).  Plaintiff stated
that he expected Dr. Sommer to be suspended and reprimanded.
(Id.).  No informal resolution was reached.  (Id.).

        On May 20, 2011, Plaintiff filed a Request for
Administrative Remedy ("BP-9") alleging that Dr. Sommer acted
"in deliberate indifference" by failing to treat his left hand
in a timely manner "because of my segregation status."  (Id. at
21 of 58).  Plaintiff also alleged that Dr. Sommer had
prescribed the wrong medication. (Id.).  Plaintiff asked that
Dr. Sommer be suspended and reprimanded again.  (Id.).  On June
3, 2011, the BP-9 was denied on the ground that, based on the
records of Plaintiff's treatment starting on January 15, 2010,
"there is no evidence there was a delay in treatment nor was
wrong medication prescribed."  (Id. at 20 of 58).

                              10

On June 20, 2011, Plaintiff filed a Regional
Administrative Remedy Appeal ("BP-10") alleging that he
"constantly complained about [his] hand for two weeks before
being seen by Dr. Sommer." (Id. at 19 of 58).  Plaintiff also
complained that no culture of his hand was taken until he
visited an outside hospital, and alleged that Bactrim was the
wrong medication.  (Id.).  He again asked that Dr. Sommer be
suspended and reprimanded. (Id.).  On November 17, 2011, the BP-
10 was denied because "[t]he clinical care you received was
appropriate based on your clinical presentation and there was no
indication that your medical care was delayed." (Id. at 18 of
58).

On December 7, 2011, Plaintiff filed a Central Office
Administrative Remedy Appeal ("BP-11") reiterating the same
allegations made in his BP-10.  (Id. at 17 of 58).  On February
8, 2012, the BP-11 was denied because medical records of
Plaintiff's treatment "confirm[ed] that your condition was
treated appropriately.  There is no evidence of improper medical
care or delayed treatment for your hand." (Id. at 16 of 58).
Plaintiff filed an administrative tort claim on May 31, 2011,
seeking $125,000 for personal injury related to his wound. (Id.
at 14 of 58 to 15 of 58).  The tort claim alleged that Plaintiff

11

"was refused medical treatment by Dr. Sommer because of my status in (SHU)." (Id. at 14 of 58).  Plaintiff's tort claim was denied on November 22, 2011 on the ground that once Plaintiff "first complained to staff . . . on January 15, 2010," he "promptly received medical treatment." (Id. at 13 of 58).

## III. Standard of Review

On a motion to dismiss to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235–36, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 129 S. Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

Where a plaintiff proceeds pro se, a court must liberally construe his submissions on "the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).  The submissions of pro se litigants are therefore held to "less stringent standards than formal pleadings drafted by lawyers," Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980), and courts "apply[ ] a more flexible standard to evaluate their sufficiency tha[n] when reviewing a complaint submitted by counsel."  Lerroan v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000).

13

Courts construing pro se complaints must therefore "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." Weixel v. Bd. of Educ. of New York, 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)) (internal quotation marks omitted). That being said, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).

## IV. **Discussion**

Viewing Plaintiff's claims liberally due to his pro se status,[1] the Court construes the Complaint as asserting constitutional claims against Defendants pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and as asserting a tort claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671, et seq.

---

[1] The Complaint incorrectly relies on an inapplicable statute, 42 U.S.C. § 1983, which provides a cause of action when plaintiffs are deprived constitutional rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's claims because he has not alleged, nor could he, that the federal defendants named here were acting under color of state law. Plaintiff has conceded to Defendants' assertion. Thus, considering Plaintiff's admission as well as his pro se status, Plaintiff's allegations will be read expansively as asserting Bivens and FTCA claims.

14

Inmates' claims under both Bivens and the FTCA require that a plaintiff exhaust administrative remedies before pursuing such claims.  Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that "federal prisoners suing under Bivens [ ] must exhaust inmate grievance procedures . . ." (internal citation omitted)); Celestine v. Mt. Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (stating that "[t]he FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.").

## A) The Bivens Claims

## Standard of Review and the Prisoner Exhaustion Requirement

To state a claim for a constitutional violation under Bivens, a plaintiff must allege that an individual defendant was personally involved in the purported violation.  See e.g., Iqbal, 556 U.S. at 676 (stating that "[b]ecause vicarious liability is inapplicable to Bivens . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Glendora v. Pinkerton Sec. & Detective Servs.,

15

25 F. Supp. 2d 447, 452 (S.D.N.Y. 1998) (finding that "[i]n
order to state a claim under Bivens, [plaintiff] must allege
that [defendant] personally violated a well-established
constitutional right of which a reasonable persons would have
known.  Absent such specific allegations, the complaint is
insufficient as a matter of law and must be dismissed.")
(internal citations omitted).


        As to supervisory defendants, personal involvement
"may be shown by evidence that the defendant: (1) directly
participated in the constitutional violation; (2) failed to
remedy the violation after learning of it through a report or
appeal; (3) created a custom or policy fostering the violation
or allowed the custom or policy to continue after learning of
it; (4) was grossly negligent in supervising subordinates who
caused the violation; or (5) failed to act on information
indicating that unconstitutional acts were occurring." Thomas
v. Ashcroft, 470 F.3d 491, 496-97 (2d Cir. 2006).  Furthermore,
only intentional, not negligent, conduct is actionable under
Bivens . See Schweiker v. Chilicky, 487 U.S. 412, 447, 108 S.
Ct. 2460, 101 L. Ed. 2d (1988) (stating that "in order to
prevail in any Bivens action, [a plaintiff] must prove a
deliberate abuse of governmental power rather than mere
negligence, and overcome the defense of qualified immunity.")

16

(citations omitted).

In addition, an incarcerated prisoner seeking to file a Bivens action challenging prison conditions must satisfy another requirement that he first administratively exhausted his remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e et seq. ("PLRA"); see also Porter, 534 U.S. at 524 (stating that the PLRA "applies to all prisoners seeking redress for prison circumstances or occurrences"); Strong v. Edwards, No. 05 Civ. 0104, 2005 WL 2542910, at *3 (S.D.N.Y. Oct. 11, 2005) (finding that a prisoner must exhaust all administrative remedies "regardless of whether a prisoner complains about general prison conditions or about a specific incident."). "Failure to exhaust may be excused only where (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) special circumstances . . . justify the prisoner's failure to comply with administrative procedural requirements." Adekoya v. Fed. Bureau of Prisons, 375 Fed. App'x 119, 121 (2d Cir. 2010) (citation and internal quotation marks omitted).

When a plaintiff has followed the PLRA administrative exhaustion procedure as to certain allegations, he may not

17

subsequently introduce new allegations in his Bivens suit that
were not exhausted. See, e.g., Strong, 2005 WL 2542910, at
*4 (S.D.N.Y. Oct. 11, 2005) (concluding that plaintiff's
administrative grievances were insufficient to meet exhaustion
requirement as to some allegations set forth in complaint);
Verley v. Goord, No. 02 Civ. 1182, 2004 WL 526740, at *26-28
(S.D.N.Y. Jan. 23, 2004) (recommending that plaintiff not be
allowed to add new allegations and new defendants because
he did not exhaust remedies as to those allegations and
defendants); Petty v. Goord, No. 00 Civ. 803 (MBM), 2002 WL
31458240, at *4 (S.D.N.Y. Nov. 4, 2002) (holding that
"allegations in the complaint that were not mentioned in [prior]
grievance are barred by section 1997e(a).").  The purpose of the
exhaustion requirement is to "provide enough information about
the conduct of which they complain to allow prison officials
to take appropriate responsive steps," Strong, 2005 WL 2542910,
at *4 (citation and internal quotation marks omitted); to allow
allegations in a federal suit to go forward that were never made
at the administrative level "would make a mockery of the
exhaustion requirement." Luckerson v. Goord, No. 00 Civ.
9508(JSR), 2002 WL 1628550, at *2 (S.D.N.Y. July 22, 2002).


**The United States, BOP and the Individual Defendants named in
Their Official Capacities Are Not Subject to Bivens Claims**

18

As a threshold matter, any <u>Bivens</u> claims in the
Complaint against the United States, the BOP, or the individual
Defendants in their official capacities are barred by the
doctrine of sovereign immunity.

Under the doctrine of sovereign immunity, the United
States "is immune from suit save as it consents to be sued ...
and the terms of its consent to be sued in any court define that
court's jurisdiction to entertain the suit." <u>United States v.
Mitchell</u>, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607
(1980) (citation and quotation marks omitted). Accordingly,
absent a waiver of sovereign immunity, federal courts lack
subject matter jurisdiction over a plaintiff's claims against
the United States. See <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 114 S.
Ct. 996, 127 L. Ed. 2d 308 (1994). Courts may not find a waiver
of sovereign immunity to exist unless Congress has
"'unequivocally expressed' [the waiver] in statutory text."
<u>Adeleke v. United States</u>, 355 F.3d 144, 150 (2d Cir. 2004)
(quoting <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 33,
112 S. Ct. 1011, 117 L.Ed.2d 181 (1992)). In the absence of such
a waiver, the court lacks jurisdiction. See <u>Makarova v. United
States</u>, 201 F.3d 110, 113 (2d Cir. 2000).

In addition, sovereign immunity protection applies not

19

only to the United States, but also to "a federal agency or
federal officers [acting] in their official capacities."
Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d
Cir. 1994).   Thus, Bivens claims may only be brought against
defendants sued in their individual capacities.   See e.g. Higazy
v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy
available in a Bivens action is an award for monetary damages
from defendants in their individual capacities.").

Accordingly, to the extent that Plaintiff is asserting
Bivens claims against the United States, the BOP and the
individual Defendants, they are dismissed for lack of subject
matter jurisdiction.


**Plaintiff Has Not Exhausted His Administrative Remedies as to
Defendants Killian and Aumick**

Liberally construing the Complaint to name Defendants
Killian and Aumick in their individual capacities, Plaintiff has
not exhausted his administrative remedies against those
defendants and any Bivens claims against them accordingly fail.
See Collins v. Goord, 438 F. Supp. 2d 399, 413 (S.D.N.Y. 2006)
(dismissing claims against specific defendants for failure to
exhaust because the "grievance does not name or even allude
generally to defendants.").

All of Plaintiff's administrative claims pursuant to
the PLRA are attached to his Complaint.  A review of Plaintiff's
PLRA administrative filings shows that each one is focused on
identifying Dr. Sommer and complaining specifically about her
alleged conduct in treating Plaintiff's wound.  (See Def. Motion
at 6-7; Comp. at Doc. 2, at 16 of 58 to 22 of 58).  Indeed, the
only remedy sought in each of the Plaintiff's administrative
filings is Dr. Sommer's suspension and reprimand.  (Id.).

In his opposition, Plaintiff does not deny that his
PLRA administrative filings fail to mention Defendants Killian
and Aumick.  Plaintiff, however, contends that he has provided
enough information to the BOP in his filings to nevertheless
fulfill the PLRA exhaustion requirement.  (Pl. Opp. at 12-13).
He maintains that "there should be some accountability on behalf
of the defendants with respect to their duty to investigate
Plaintiff's grievances."  (Id. at 13).  To support his
contention, Plaintiff cites to Sultan v. Wright, in which "rigid
'issue exhaustion' appeared inappropriate'" where a prisoner
plaintiff's knee surgery was recommended, but not performed for,
three years and where the plaintiff could not have identified
all the numerous doctors in three different institutions.  265
F. Supp. 2d 292, 298 (S.D.N.Y. 2003).  Here, in contrast,

21

Plaintiff's administrative grievances focused on Dr. Sommer and her particular alleged conduct.  Plaintiff knew of and could have pursued his PLRA remedies against Defendants Killian and Aumick, but chose not do so.

Plaintiff's citation to Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2d Cir. 2001), in support of his argument is also inapposite.  Contrary to Plaintiff's interpretation of the holding that the "PLRA requires prisoners to exhaust a process, not a remedy, there the Supreme Court held that the PLRA requires exhaustion even where the remedy sought by the prisoner is not provided for by the grievance processes available to the prisoner.  Id. at 741.

Taken together, because Plaintiff failed to exhaust his administrative remedies as to Defendants Killian and Aumick and because he has not shown that he should be excused from exhausting his PLRA remedies as to those defendants, he may not now assert Bivens claims against them.

**Plaintiff Has Not Stated a Bivens Claim as to Any Defendants**

Even assuming that Plaintiff had properly exhausted his administrative remedies against all of the individual

22

Defendants, the Complaint does not provide sufficient facts as
to any violation of Plaintiff's constitutional rights by any of
the Defendants.

Plaintiff's allegations about his medical treatment
are most fairly construed as a claim of deliberate indifference
to his medical needs, arising out of the Eighth Amendment.  See
Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) ("A convicted
prisoner's claim of deliberate indifference to his medical needs
by those overseeing his care is analyzed under the Eighth
Amendment because the right the plaintiff seeks to vindicate
arises from the Eighth Amendment's prohibition of 'cruel and
unusual punishment.'").  Deliberate indifference to the serious
medical needs of someone in custody is a violation of the Eighth
Amendment inasmuch as it is the equivalent of "unnecessary and
wanton infliction of pain."  See id.

In order to make out a constitutional claim under the
deliberate indifference standard, a plaintiff must meet an
objective and a subjective requirement.  First, the inmate must
show that the alleged deprivation must be, in objective terms,
"sufficiently serious."  Fate v. Goord, No. 11 Civ. 7493(RWS),
2012 WL 3104884, at *5 (S.D.N.Y. July 31, 2012).  This standard
contemplates a "condition of urgency, one that might produce

23

death, degeneration or extreme pain." Hathaway v. Coughlin, 37
F.3d 63, 66 (2d Cir. 1994).  Only "those deprivations denying
the minimal civilized measure of life's necessities are
sufficiently grave to form the basis of an Eighth Amendment
claim . . . ." Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct.
995, 117 L. Ed. 2d 156 (1992); Liscio v. Warren, 901 F.2d 274,
277 (2d Cir. 1990).


          Next, the facts must give rise to an inference that
the persons charged with providing medical care knew of those
serious medical needs and intentionally disregarded them.  Fate,
2012 WL 3104884, at *5.  Under this prong, an inmate must show
that the prison official had a "sufficiently culpable state of
mind" and must subjectively know of and disregard an excessive
risk to the inmate's health and safety.  See id. at *6.  A
plaintiff must show that the acts or omissions of defendants
"involved more than lack of due care, but rather involved
obduracy and wantonness in placing his health in danger."
LaBounty v. Coughlin, 137 F.3d 68, 72 (2d Cir.1998).
Essentially, "[d]eliberate indifference is 'a state of mind that
is the equivalent of criminal recklessness.'" Hernandez v.
Keane, 341 F.3d 137, 145 (2d Cir. 2003) (quotation omitted).


          While is it is questionable whether Plaintiff's hand

24

injury satisfies the objective prong, even assuming that it
does, Plaintiff has failed to satisfy the subjective requirement
as to all Defendants.  As to Killian, the Complaint fails to
state a claim for an Eighth Amendment violation against her.
The Complaint merely alleges that Killian "had returned from her
vacation" around the same time that Plaintiff was first injured,
(Compl. at Doc. 2, 3 of 58), and that in late January 2010,
Plaintiff spoke with Killian about the treatment he was
receiving from the medical staff.  (Id. at 5 of 58).  These
allegations, without more, do not demonstrate that Killian was
personally involved in Plaintiff's medical treatment nor do they
satisfy the tests for supervisory liability with respect to a
Bivens claim.  See Thomas, 470 F.3d at 496-97.


        As to Aumick, the Complaint sets forth some facts as
to a few instances when Aumick provided treatment to the
Plaintiff.  (See e.g., Compl. at Doc. 2, 4 of 58 to 5 of 58).
However, the only allegation that could fairly be construed as
an allegation of wrongdoing is the assertion that in early
January 2010, Aumick did not immediately examine Plaintiff's
hand upon request.  (Id. at 3 of 58).  The Complaint alleges that
when Plaintiff first showed his hand to Aumick, the wound
appeared "to be a spider bite."  (Compl. at Doc. 2, at 3 of 58).
Plaintiff asserts that "the swelling started" only after he

25

showed the wound to Aumick. (Id.).  Additionally, Aumick
attempted to treat Plaintiff's wound directly on January 17,
2010.  (Id.).  These allegations do not rise to the level of
deliberate indifference and culpable state of mind required to
state a Bivens claim.

    As to Dr. Sommer, Plaintiff's allegations include: (1)
suggestions that Dr. Sommer must have received reports of
Plaintiff's condition from members of her medical staff (id. at
3 of 58 to 4 of 58); (2) conclusory assertions that upon
receiving these reports, Dr. Sommer should have personally
examined Plaintiff, and did not (id.); and (3) the allegation
that Dr. Sommer incorrectly prescribed Bactrim in mid-January
(id. at 4 of 58).  The Complaint does not allege that she
actually knew of any serious condition before January 16, 2010;
it only claims that various prison employees told Plaintiff they
would inform Dr. Sommer.  (Id. at 3 of 58 to 4 of 58). The
Complaint admits that as of January 16, 2010, Dr. Sommer had
prescribed medication to Plaintiff, and the next day, she
ordered that he be sent to an emergency room for care. (Id. at 4
of 58).

    The allegations that treatment provided by Aumick and
Dr. Sommer was negligent, as alleged in the Complaint, are not

26

action able under Bivens.  Even if plaintiff claims he suffered

pain, it would not in itself satisfy the state of mind

requirement. See Wilson v. Seiter, 501 U.S. 294, 298-303, 111 S.

Ct. 2321, 115 L. Ed. 2d 271 (1991).  It is well-settled that

"disagreements over medications, diagnostic techniques, forms of

treatment or the need for specialists or the timing of their

intervention" are insufficient.  Estelle v. Gamble, 429 U.S. 97,

97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); see also Collazo-

Portillo v. D'Avirro, No. 3:06CV2028(PCD), 2007 WL 1614527, at

*2 (D. Conn. May 29, 2007).  The case law also "draws a clear

distinction between situations in which the physician provides

no medical care, which may amount to deliberate indifference,

and those in which the physician provides merely substandard

care, which amounts at most to negligence." Sereika v. Patel,

411 F. Supp. 2d 397, 407 (S.D.N.Y. 2006) (citation and internal

quotation marks omitted).  The Complaint does not demonstrate

that Aumick and Dr. Sommer were "aware of facts from which the

inference could be drawn that a substantial risk of serious harm

exists," or that either defendant "failed to take reasonable

measures to abate" the risk.  Farmer v. Brennan, 511 U.S. 825,

837, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Instead,

Plaintiff's submissions demonstrate that starting in mid-

January, Plaintiff began to receive significant amounts of care

for his hand, including multiple visits to specialists and two

27

surgeries.

Specifically, the medical records attached to the
Complaint indicate that when Plaintiff was first treated for his
wound in mid-January, he repeatedly reported, to medical staff
both inside and outside the prison, that he had only been
suffering symptoms for a few days, and not for weeks. (See,
e.g., Compl. at Doc. 2-1, at 19 of 47, 24 of 47, 27 of 47; id.
at Doc. 2, at 28 of 58, 31 of 58, 33 of 58, 54 of 58).
Additionally, when Plaintiff was first treated in the prison,
the medical records indicate that he did not appear to be in
acute distress. (Id. at Doc. 2-1, at 19 of 47). The records
also indicate that Dr. Sommer's prescription of the antibiotic
Bactrim to treat Plaintiff was appropriate, as evidenced by the
fact that physicians at Westchester Medical stated that the
bacterium found in Plaintiff's wound was sensitive to treatment
by Bactrim, and prescribed Bactrim for Plaintiff's further
treatment. (Id. at 33 of 58).

Moreover, Plaintiff's Bivens claim against Defendants
Killian, Aumick, and Sommer fails for the additional reason that
these defendants are qualifiedly immune from suit on such a
claim. The doctrine of qualified immunity "entitles public

officials to freedom from suit for acts undertaken in their
official capacity if (1) their conduct does not violate clearly
established constitutional rights, or (2) it was objectively
reasonable for them to believe their acts did not violate those
rights." Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir.
2000) (citations and internal quotation marks omitted).
Accordingly, the qualified immunity standard "gives ample room
for mistaken judgments by protecting all but the plainly
incompetent or those who knowingly violate the law." Hunter v.
Bryant, 502 U.S. 224, 229 (1991) (citation and internal
quotation marks omitted).

Lastly, Plaintiff argues that his Bivens claim "should
be decided by a jury." (Pl. Opp. at 15). Courts in this
district, however, routinely dispose of inadequately pled
deliberate indifference claims at the motion to dismiss stage.
See, e.g., Ortiz v. City of New York, No. 12 Civ. 3118(HB), 2012
WL 6200397, at *4-5 (S.D.N.Y. Dec. 12, 2012) (dismissing
deliberate indifference claim at Rule 12(b)(6) stage as to
defendants whose knowledge of plaintiff's medical condition was
insufficiently alleged); Best v. City of New York, No. 11 Civ.
4475(JMF), 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012)
(dismissing deliberate indifference claim on Rule 12(b)(6)
motion because, inter alia, the complaint insufficiently alleged

29

that defendant officials knew of substantial risk of serious
harm and acted in deliberately indifferent manner); Singleton v.
Lee, No. 11 Civ. 7315(LTS)(HBP), 2012 WL 5289915, at *2
(S.D.N.Y. Oct. 26, 2012) (dismissing deliberate indifference
claim on Rule 12(b)(6) motion because plaintiff insufficiently
alleged requisite culpable state of mind).

Taken together, the medical records attached to the
Complaint demonstrates that when Plaintiff reported that he was
having hard-related problems for a few days, he received
treatment at FCI Otisville and at local hospitals over the span
of the next two months.  Plaintiff has not sufficiently
established that the individual Defendants were personally
involved in the violation of any clearly established
constitutional right to deny them the defense of qualified
immunity.  Accordingly, Plaintiff's Bivens claims against all
Defendants are dismissed under Rule 12(b)(6).

## B) Plaintiff's FTCA Claim

The FTCA is the exclusive remedy for a tort claims
against the Unites States involving the purported negligence of
a federal employee acting within the scope of this federal
employment.  28 U.S.C. § 2679(b)(1); see Hightower v. United

30

States, 205 F. Supp. 2d 146, 153 (S.D.N.Y. 2002) (the statute

provides that "a suit against the United States is the exclusive

remedy for a suit for damages for injury 'resulting from

negligent or act or omissions of any employee of the Government

while acting within the scope of his office or employment' . . .

.") (quoting 28 U.S.C. § 2679(b)(1)).  "The FTCA requires that a

claimant exhaust all administrative remedies before filing a

complaint in federal court." Celestine, 405 F.3d at 82; see

also 28 U.S.C. § 2675(a) ("An action shall not be instituted

upon a claim against the United States . . . unless the claimant

shall have first presented the claims to the appropriate federal

agency.").


        A plaintiff's administrative tort claim must supply

"more than conclusory statements which afford the agency

involved no reasonable opportunity to investigate"; rather, the

tort claim "must provide enough information to permit the agency

to conduct an investigation." Romulus v. United States, 160

F.3d 131, 132 (2d Cir. 1998); see also Romulus v. United States,

983 F. Supp. 336, 341 (E.D.N.Y. 1997) (the purpose of the FTCA's

presentment requirement "is to permit a government agency to

evaluate and settle the claim at an early stage, both for the

possibility of financial economy and for the sake of relieving

the judicial burden of FTCA suits.").  Because of this

presentment requirement, courts have dismissed allegations in
FTCA suits that were not alleged in the plaintiff's
administrative claim, for lack of subject matter jurisdiction.
See, e.g., Schunk v. United States, 783 F. Supp. 72, 81
(E.D.N.Y. 1992) (dismissing certain allegations in complaint for
lack of subject matter jurisdiction, because administrative
claim "was insufficient to allow the government to evaluate
these two issues, thus [plaintiff] failed to exhaust
administrative remedies").

## The Only Proper Defendant to Plaintiff's FTCA claim is the United States

"The only proper federal institutional defendant in
[an FTCA] action is the United States."  Rivera v. United
States, 928 F.2d 592, 609 (2d Cir. 1991).  To the extent a tort
claim is based upon the conduct of a federal employee or
official, the United States substitutes as defendant "[u]pon
certification by the Attorney General that the defendant
employee was acting within the scope of his office or employment
at the time of the incident out of which the claim arose."
Fiore v. Medina, No. 11 Civ. 2264(RJS), 2012 WL 4767143, at *5
(S.D.N.Y. Sept. 27, 2012) (citation and internal quotation marks
omitted); see also 28 U.S.C. § 2679(d)(1). "Moreover, an express
petition for certification is not required and a brief on behalf

32

of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment." *Id.* (citation and internal alteration and quotation marks omitted) (citing cases).

The Defendants contend that their brief should serve as a petition to certify that individually named Defendants Killian, Aumick and Dr. Sommer were acting within the scope of their employment at the time of the incidents alleged in the Plaintiff's Complaint.  No allegation by the Plaintiff or in the Complaint states or suggests otherwise.  Accordingly, any FTCA claim against the BOP or any of the individual Defendants acting within the scope of their employment, will be against the United States, as a substitute as the proper defendant.  See Point-Dujour v. United States Postal Serv., No. 02 Civ. 6840(JCF), 2003 WL 1745290, at *3 n.5 (S.D.N.Y. Mar. 31,2003) (noting that because the scope of employment was undisputed, United States was proper defendant).

**Plaintiff Fails to State a Tort Claim Against Dr. Sommer**

Plaintiff filed an administrative tort claim alleging that from January 1, 2010 to January 17, 2010, Dr. Sommer refused to provide medical treatment to Plaintiff for his wound

"because of [his] status in (SHU)." (Compl. at Doc. 2, at 14 of 58). The tort claim did not mention any wrongdoing by any other defendant, not did it complain of any other any other denial of treatment.[2] Thus, Plaintiff has not exhausted his administrative remedies as to any other Defendant besides Dr. Sommer.

As to Dr. Sommer, Plaintiff clarifies the substance of his tort claim in his opposition,[3] stating "that "Dr. Sommer [] committed the tort of malpractice when she did not treat plaintiff until January 30th, 30 days after he started complaining about his hand . . . The bottom line is that Plaintiff was not seen by anyone qualified to diagnos[e] him until it was too late." (Pl. Opp. at 11). Plaintiff also contends that Dr. Sommer "provided the wrong medications." (Id.).

---

[2] In his opposition, Plaintiff advances a new tort theory for the first time arising from Aumick's conduct in treating Plaintiff's wound on January 17, 2010. (See Pl. Opp. at 10). Plaintiff states, for the first time, that the nerve damage to his hand "was likely a result of the 'cut' Paramedic Aumick made in plaintiff's hand without the medical authority to perform surgery." (Id.). However, there was no mention of Aumick or his choice of treatment on January 17, 2010 in Plaintiff's administrative tort claim. Thus, Plaintiff has failed to exhaust any tort claim as to Aumick, and this Court lacks subject matter jurisdiction over such allegations. See Guthrie v. Fed. Bureau of Prisons, No. 09 Civ. 990(LAP), 2010 WL 2836155, at *4 (S.D.N.Y. July 7, 2010) (dismissing, for lack of subject matter jurisdiction, allegations of injuries that were not alleged on plaintiff's SF 95, the BOP's administrative remedy, and therefore not exhausted).

[3] While the Complaint does not identify the specific tort that appropriately corresponds to Plaintiff's allegations against Dr. Sommer, liberally interpreted, this Court will interpret the claims as those of negligence and medical malpractice.

Under New York law, a negligence claim requires ""(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Fed. Ins. Co. v. Distiguished Properties Umbrella Managers Inc., 721 F. Supp. 2d 293, 299 (S.D.N.Y. June 28, 2010) (citation omitted).  In addition, the elements of a medical medical malpractice under New York law are: "(1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." Torres v. City of New York, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001).  "However, a prison cannot be required to meet the same standard of medical care found in non-prison hospitals." Rivera v. Fed. Bureau of Prisons, No. 08 Civ. 5590(SAS), 2009 WL 585828, at *4 (S.D.N.Y. Mar. 5, 2009). "Moreover, a prisoner has no right to the treatment of his choice." Id.

The Complaint does not adequately allege that Dr. Sommer breached a duty to the Plaintiff between January 1, 2010 and January 15, 2010.  There are no allegations that Dr. Sommer had any duty to Plaintiff to personally examine or treat him, rather than instructing her medical staff to do so.  Plaintiff only asserts that various FCI medical personnel told him that they would inform Dr. Sommer of his condition, however there are no allegations that Dr. Sommer knew of Plaintiff's wound until

35

after January 15, 2010. (Compl. at Doc. 2, at 2 of 58 to 4 of 58). In fact, the Complaint acknowledges that on January 16, 2010, Dr. Sommer prescribed treatment for his wound, and he received treatment every day following. (Id. at 4 of 58).

Plaintiff's medical records also do not suggest that Dr. Sommer possessed and ignored information that Plaintiff was experiencing a medical condition until Dr. Sommer was first consulted on January 15, 2010 by a prison medical employee. (Compl. at Doc. 2-1, at 19 of 47 to 21 of 47). Specifically, the earliest-dated record shows that on January 15, 2010, Plaintiff told Travers that the "swelling ha[d] increased over the past few days" and that he felt pain, but "appear[ed] to be in no acute distress." (Id. at 19 of 47). In addition, Dr. Sommer cosigned the report on January 15, 2010 at 11:47. (Id. at 21 of 47). Over the next few days, the record indicates that Dr. Sommer was informed of and consulted as to Plaintiff's care by Aumick and Travers, and that she provided daily instructions. (Compl. at Doc. 2-1, at 19 to 47 to 47 to 47).

Lastly there are no facts in the Complaint, as pled, that Dr. Sommer departed from any accepted medical practice. Plaintiff's contentions that: (1) other medical staff were unqualified to diagnose him, and (2) Dr. Sommer's deferral of

36

his treatment to others until late January was the cause of the
damage to his hand, is conclusory and unsupported by any facts.
As discussed above, the Plaintiff's medical records demonstrate
that when Plaintiff presented his symptoms to FCI's medical
personnel, he admitted he had experienced pain for a few days
prior, and he received medical care both inside and outside of
FCI.

Accordingly, Plaintiff has not pled sufficient facts
to state a FTCA claim against Dr. Sommer and the claim against
the United States, as the proper defendant, is dismissed.

## V. **Conclusion**

Based upon the conclusions set forth above, the
Defendant's motion to dismiss is granted without prejudice.

When a motion to dismiss is granted, "[i]t is the
usual practice . . . to allow leave to replead." Schindler v.
French, 232 Fed. App'x 17, 19 (2d Cir. 2007) (citation omitted).
Where a pro se complaint read liberally "gives any indication
that a valid claim might be stated," a district court "should
not dismiss without granting leave to amend at least once[.]"
Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citing

37

Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

Accordingly, leave to replead within 60 days.


        It is so ordered.


New York, NY
June 22, 2013

                                    _____
                                    ROBERT W. SWEET
                                      U.S.D.J.


38