UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

RICHARD WILLIAM SKYERS,

                          Plaintiff,          12 Civ. 3432

     -against-                                OPINION

F.C.I. OTISVILLE OFFICIAL, DR.
SOMMER,

                          Defendant.

------------------------------------------X

A P P E A R A N C E S:

          <u>Pro Se</u>

          RICHARD WILLIAM SKYERS
          Reg. No. 21052-077
          F.C.I. Otisville
          P.O. Box 1000
          Otisville, NY 10963


          <u>Attorneys for Defendant</u>

          PREET BHARARA
          U.S. Attorney for the S.D.N.Y.
          86 Chambers Street, 3rd Floor
          New York, NY 10007
          By:  Rebecca S. Tinio, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8|23|16

**Sweet, D.J.**

The defendant Diane Sommer, M.D. ("Sommer" or the "Defendant") has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint of plaintiff pro se Richard W. Skyers ("Skyers" or the "Plaintiff"). Based upon the conclusions set forth below, the motion is granted and the Amended Complaint is dismissed.

**Prior Proceedings**

Plaintiff filed his original *pro se* Complaint against several defendants on or about April 30, 2013, see Compl. The Government moved to dismiss the Complaint on behalf of all defendants, see Dkt. Nos. 16-18, 23. The Government's motion to dismiss the Complaint was granted on July 2, 2013. With respect to Dr. Sommer, the Court held that it lacked jurisdiction over any *Bivens* claim against Dr. Sommer in her official capacity; that Plaintiff failed to state a *Bivens* claim against Dr. Sommer, Motion to Dismiss Opinion ("MTD Op.") at 22-28; that Dr. Sommer was qualifiedly immune from suit on Plaintiff's *Bivens* claim; that under the Federal Tort Claims Act ("FTCA"), the United States would be substituted as Defendant with respect to

1

Plaintiff's tort claim against Dr. Sommer, *id.* at 32-33; and
that Plaintiff failed to state a tort claim against the United
States arising from his allegations relating to Dr. Sommer.

The Court, acknowledging Plaintiff's *pro se* status,
granted Plaintiff leave to amend within sixty days. *Id.* at 37-
38. Plaintiff did not timely amend the Complaint within the time
allotted by the Court, but instead filed a series of motions,
which the Government opposed. See *id.* The Court denied
Plaintiff's motions by an Opinion dated March 25, 2014, but "for
reasons unknown to the Court the Opinion was never filed,"
Replead Op. at 3. Thereafter, Plaintiff purported to "re-
exhaust" his administrative remedies and asked for leave to
replead, see Dkt. No. 39, Ex. D (containing copies of
Plaintiff's supposed administrative filings in 2014). Although
Plaintiff's time to replead "ha[d] long since passed," the Court
noted "the extraordinary circumstances present in this case,"
including that "it would be inequitable to bar Skyers' claim
because of a delay that resulted from errors within the District
Court." Replead Op. at 4-6. Plaintiff's opportunity to refile
was limited "to the claims [that] were not procedurally barred
in his first Complaint, namely the FTCA claims against the

United States stemming from the actions of Dr. Sommer." *Id.* at 7.

The Court denied Plaintiff's first attempt at filing an Amended Complaint (which was styled as a second motion for leave to replead), see Dkt Nos. 43-45, noting that Plaintiff "intends to simply re-file the Complaint he originally filed in April of 2013," Dkt. No. 45 at 2, and advising Plaintiff to "file an amended complaint that cures the defects in his original pleading," *id.* at 3. Thereafter, Plaintiff filed a third motion to replead, see Dkt. No. 46, which the Court construed as his amended pleading, see Dkt. No. 47. The Amended Complaint asserts that PA Kubicz told Plaintiff that he informed Dr. Sommer on January 11, 2010, of Plaintiff's condition, and that the alleged four-day delay before Plaintiff was treated on January 15, 2010, constitutes deliberate indifference by Dr. Sommer.

The instant motion was marked fully submitted on May 19, 2016.

**The Amended Complaint**

3

The original Complaint (Dkt. No. 2) was explicitly incorporated by reference into the Amended Complaint, see Am. Compl. at 3), as well as the documents attached to the Complaint. The Amended Complaint alleges the following facts.

On January 1, 2010, while residing in the special housing unit ("SHU") in FCI Otisville, Skyers noticed what he believed to be a spider bite on his hand, which he reported to the medical staff. Compl. at Doc. 2, p. 3 of 58. In the next few days, Plaintiff's hand began to swell, but despite his numerous complaints, medical staff, and in particular, Defendant Sommer, did not examine him. *Id.* On January 11, 2010, Plaintiff was told by a member of the medical staff, "PA Kubicz," that PA Kubicz had "briefed" Dr. Sommer "earlier that day" regarding Plaintiff's condition, and "Dr. Sommer made clear that she planned to provide medical care to the [P]laintiff's worsening condition that day." Am. Compl. at 2. Plaintiff started receiving treatment (antibiotics) on January 14. Compl. at Doc. 2, p. 4 of 58. On January 16, he was told that Dr. Sommer had prescribed pain medication, but Dr. Sommer still "never once came to the SHU to see me about my hand." *Id.* On January 17, another member of the medical staff, PA Aumick, attempted to treat Plaintiff's wound directly. *Id.* Aumick then called Dr.

4

Sommer, and Plaintiff was taken to an emergency room for further treatment. *Id.* Medical staff in the emergency room told Plaintiff that prison staff had been giving him "the wrong medication." *Id.*

Plaintiff underwent surgery and several days of treatment in a local hospital before returning to FCI Otisville on January 20. *Id.* at 4 of 58 to 5 of 58. On January 30, Plaintiff was examined and treated by Dr. Sommer. *Id.* Plaintiff was again taken to a local hospital for follow-up treatment on February 4, and underwent another surgery. *Id.* at 6 of 58. Plaintiff returned to FCI Otisville on February 11 and continued to receive treatment; Plaintiff suggests that he was not given a required medication ("Bactroban Nasal"). *Id.* at 6-7 of 58. On March 4 he was transferred to the Federal Medical Center ("FMC") at Butner, North Carolina "for shock therapy – aggressive PT/OT." *Id.* at 7 of 58. He returned to FCI Otisville in October 2011. *Id.*

The earliest-dated medical record indicates that on January 15, 2010, Plaintiff was examined by FCI Otisville employee Gerard Travers. Compl. at Doc. 2-1, p. 19 of 47. Plaintiff stated that he had an infection in his hand that had

5

begun "1-2 days" earlier (but also reported that the swelling
had increased "over the past few days"). *Id.* Travers noted that
Plaintiff "appear[ed] to be in no acute distress," and that upon
consultation, Dr. Sommer prescribed the antibiotic Bactrim for
Plaintiff. *Id.* The report was co-signed by Dr. Sommer. *Id.* at 21
of 47.

Travers examined Plaintiff early the next morning. *Id.*
at 24 of 47. Plaintiff again reported that his hand problem had
begun only in recent days. *Id.* (noting onset/duration of "3-5
days"). *Id.* Upon phone consultation, Dr. Sommer prescribed
Tylenol for Plaintiff's pain. *Id.* Dr. Sommer also requested that
medical staff be called to treat the wound. *Id.* Later that day,
Travers examined Plaintiff again. *Id.* at 22 of 47. Although
there was no medical staff immediately available to treat the
wound, Travers reported that Plaintiff had responded well to
pain medication. *Id.* Dr. Sommer again prescribed Tylenol. *Id.*

On the morning of January 17, PA Aumick treated
Plaintiff's wound, which he described as an abscess, "to try to
relieve pressure." *Id.* at 27 of 47. Plaintiff again reported the
onset/duration of his wound to be "3-5 days." *Id.* Aumick noted
that Plaintiff had been given antibiotics for the last three

6

days. *Id.* Aumick spoke with Dr. Sommer, who ordered that
Plaintiff be taken to an outside hospital for evaluation. *Id.*

Plaintiff was admitted to the Orange Regional Medical
Center that same day. Compl. at Doc. 2, p. 28 of 58. The record
of his admission reports that "[a]ccording to the patient, the
past Thursday he started having some left hand pain." *Id.*
Plaintiff was then sent to Westchester Medical Center
("Westchester") when it was determined that he should have a
surgical procedure. *Id.* at 29 of 58, 54 of 58. The report of
Plaintiff's admission to Westchester reports that Plaintiff
complained of a "painful mass . . . first noted 4 days back."
*Id.* at 54 of 58.

On January 18, physicians at Westchester performed:
(1) drainage of a deep abscess on Plaintiff's left palm, (2)
incision of his tendon sheath, and (3) fasciotomy of Plaintiff's
palm and carpal tunnel. *Id.* at 30 of 58. The operative report
observes that Plaintiff "presented with a one week history of
left hand pain." *Id.* at 31 of 58. Plaintiff was discharged from
Westchester on January 20. *Id.* at 33 of 58. The discharge
summary notes that Plaintiff had presented with "about a four-
day course of increased pain and swelling." *Id.* The summary also

7

reports that the bacterium MRSA had been found in Plaintiff's wound, and that the bacterium would be sensitive to treatment by antibiotics, including Bactrim. *Id.* at 35 of 58. In fact, Bactrim was among the medications prescribed for Plaintiff upon his discharge. *Id.;* see also *id.* at 58 of 58.

Upon Plaintiff's return to FCI Otisville, Dr. Sommer noted his diagnosis and the prescription of Bactrim. Compl. at Doc. 2-1, p. 34 of 47. Plaintiff received frequent treatments over the next several days and was encouraged by prison medical staff to exercise his left hand and fingers, although he protested that it was painful to do so. E.g., *id.* at 39 of 47. Dr. Sommer examined and treated Plaintiff on January 29, 2010. *Id.* at 43 of 47. Plaintiff again resisted exercising his fingers, and refused to continue taking Tylenol for his pain, as he stated it was causing abdominal discomfort. *Id.*

On February 4, 2010, Plaintiff was sent back to Westchester Medical Center. Compl. at Doc. 2-2, p. 7 of 24; *id.* at Doc. 2-1, p. 16 of 47. On February 5, Dr. Sommer noted that she had spoken with medical personnel at Westchester, and they believed that Plaintiff did not have "any active infection" and that he "does not want to move his fingers." *Id.* at Doc. 2-2,

8

p. 10 of 24. Personnel at Westchester placed Plaintiff "in a splint to encourage movement of his fingers." *Id.* Plaintiff underwent another surgical procedure on February 8, 2010. *Id.* at Doc. 2, p. 38 of 58. The discharge summary reports that no "infectious process" was found, and that Plaintiff's described pain "was consistent more with stiffness due to limitation from the splint than infectious." *Id.* at 44 of 58; see also 40 of 58, 42 of 58 (also noting that no infection was found). Plaintiff returned to FCI Otisville on February 11, 2010. *Id.* at Doc. 2-2, p. 18 of 24. Upon his return, Dr. Sommer explained that Plaintiff "must start moving his fingers despite the pain." *Id.*

Plaintiff was transferred to FMC Butner in March 2010, where he continued to receive treatment for his hand. *Id.* at 22 of 24 to 24 of 24; see also *id.* at Doc. 2, p. 20 of 58 (noting Plaintiff's transfer to Butner on March 4, 2010, and his examination by a neurosurgeon "who suspected entrapment neuropathy," which "is a complication of the fasciotomey surgery").

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). However, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess,*

10

*Inc.*, No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, No. 11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012)).  The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

Plaintiff's *pro se* status alters the interpretation of Plaintiff's submissions, but not the burdens of law on either party. *Pro se* submissions are held "to less stringent standards than formal pleadings drafter by lawyers" and must be read to "raise the strongest arguments they suggest." *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 607 (S.D.N.Y. 2004), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (citations omitted).

**Any Bivens Claim is Dismissed**

On its face, the Amended Complaint appears to assert a *Bivens* claim against Dr. Sommer, notwithstanding the fact that the Court precluded such a claim in its September 25, 2015

Opinion. See Replead Op. at 7 (permitting Plaintiff to replead only "the FTCA claims against the United States stemming from the actions of Dr. Sommer"). The Amended Complaint omits any mention of an alleged tort or the FTCA, but does accuse Dr. Sommer of "deliberate indifference" and a violation of Plaintiff's rights under the Eighth Amendment. See Am. Compl. at 2-3. It is well established that constitutional tort claims are not cognizable under the FTCA. See, e.g., *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). To the extent the Amended Complaint asserts a constitutional claim against Dr. Sommer, that claim must arise under *Bivens*.

Any *Bivens* claim against Dr. Sommer in the Amended Complaint is again dismissed pursuant to Rule 12(b)(6) for all the same reasons set forth in the Court's July 2, 2013 Opinion. See MTD Op. at 15-30. The Court concluded, among other things, that it was "questionable" whether Plaintiff's injury satisfied the objective element of a *Bivens* claim for deliberate indifference (referring to whether or not an injury is "sufficiently serious"), and that in any event, "Plaintiff has failed to satisfy the subjective requirement [a sufficiently culpable state of mind] as to all Defendants." *Id.* at 23-25.

12

The only new allegation in the Amended Complaint is that on January 11, 2010, "PA Kubicz" told Plaintiff that he had "briefed" Dr. Sommer earlier that day about Plaintiff's condition and that Dr. Sommer told PA Kubicz that she would provide medical care to Plaintiff that day. Am. Compl. at 2. This new contention augments Plaintiff's initial allegations against Dr. Sommer only in that, if assumed to be true, it identifies January 11, 2010, rather than January 15, 2010, as the first day on which Dr. Sommer was presumably aware of Plaintiff's condition. See Compl. at Doc. 2-1, p. 19 of 47 to 21 of 47 (January 15, 2010 Clinical Encounter report co-signed by Dr. Sommer).

This new allegation, relying entirely on a four-day gap between January 11, 2010, and the commencement of Plaintiff's treatment on January 15, 2010, does not bolster Plaintiff's *Bivens* claim, if any, against Dr. Sommer. Indeed, this allegation is contradicted by the medical records attached to the Complaint. See *Frigerio*, 2011 WL 3163330, at *6. Those records reflect no mention of the supposed January 11, 2010 interaction between Plaintiff and PA Kubicz, and also indicate that when Plaintiff was treated by Travers on January 15, 2010, Plaintiff reported that his injury had occurred only 1-2 days

13

before, and that he was not in acute distress. See Compl. at
Doc. 2-1, p. 19 of 47.

Leaving aside the question of whether Plaintiff's
wound was "sufficiently serious" to satisfy the objective prong
of a *Bivens* claim, *see*, *e.g.*, *Hathaway v. Coughlin*, 37 F.3d 63,
66 (2d Cir. 1994), the new allegation does not satisfy the
subjective prong, in that it in no way adequately pleads that
Dr. Sommer had a "sufficiently culpable state of mind" with
respect to Plaintiff's hand injury. *Id.* Notably, the subjective
prong of a *Bivens* claim does not encompass mere negligence, or
even civil recklessness. *Farmer v. Brennan*, 511 U.S. 825, 836-37
(1995); *see also, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106
(1976) ("[A] complaint that a physician has been negligent in
diagnosing or treating a medical condition does not state a
valid claim of medical mistreatment under the Eighth Amendment.
. . . [A] prisoner must allege acts or omissions sufficiently
harmful to evidence deliberate indifference to serious medical
needs"); *Collazo-Portillo v. D'Avirro*, No. 3:06CV2028 (PCD),
2007 WL 1614527, at *2 (D. Conn. May 29, 2007) ("[A] claim of
misdiagnosis, faulty judgment, or malpractice without more to
indicate deliberate indifference, is not cognizable under . . .
*Bivens*"). Instead, a prisoner alleging a claim for deliberate

14

indifference must allege that the official in question was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," or "failed to take reasonable measures to abate" the risk. *Farmer*, 511 U.S. at 837, 847.

The Amended Complaint alleges no facts to establish that Dr. Sommer possessed any culpable state of mind, much less that she was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Id.* at 837. The Amended Complaint alleges only that another FCI Otisville employee told Plaintiff that he had informed Dr. Sommer on January 11, 2010, of Plaintiff's injury, then conclusorily asserts that Dr. Sommer was deliberately indifferent because Plaintiff was not treated until January 15, 2010. Am. Compl. at 2. The substantially similar allegations in the original Complaint failed to adequately allege the subjective prong of a *Bivens* claim. MTD Op. at 26-28. Even if Dr. Sommer had been informed on January 11, 2010, of Plaintiff's injury, there are no allegations that she was aware that Plaintiff faced a "substantial risk of serious harm." Plaintiff's medical records severely undercut any such allegation; for example, Travers reported on January 15, 2010,

15

that Plaintiff did not appear to be in acute distress, see
Compl. at Doc. 2-1, p. 19 of 47.

Moreover, the Amended Complaint alleges no new facts
suggesting that the care that was provided to Plaintiff over the
next several months constituted medical treatment so deficient
that it would rise to the level of deliberate indifference to
Plaintiff's medical needs. The long history of treatment
documented in Plaintiff's medical records does not give rise to
a violation of Plaintiff's constitutional rights. Plaintiff's
medical records demonstrate that Dr. Sommer took "reasonable
measures to abate" Plaintiff's medical problem. Dr. Sommer --
even assuming she had knowledge of some substantial risk to
Plaintiff's health -- acted reasonably in response to his
condition, and cannot be said to have violated any
constitutional right of Plaintiff. See *Farmer*, 511 U.S. at 844-
45.

**Qualified Immunity Protects Dr. Sommer from a Suit in this Case**

Because the Amended Complaint fails to state a claim
for any violation of Plaintiff's constitutional rights, Dr.
Sommer is qualifiedly immune to suit from the *Bivens* claim, if

16

any, asserted in the Amended Complaint. The doctrine of qualified immunity "entitles public officials to freedom from suit for acts undertaken in their official capacity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000). Accordingly, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Plaintiff has not established that Dr. Sommer was personally involved in the violation of any clearly established constitutional right. Therefore, Dr. Sommer is entitled to qualified immunity with regard to Plaintiff's *Bivens* claim, if any, against her. See, e.g., *Williams v. Fisher*, No. 02 Civ. 4558 (LMM), 2003 WL 22170610, at *11 (S.D.N.Y. Sept. 18, 2003) (opining that on a motion to dismiss, a qualified immunity defense will prevail "if the complaint fails to allege the violation of a clearly established constitutional right").

**Plaintiff Fails to Adequately Plead Medical Malpractice**

"Under New York law, the requisite elements of proof
in a medical malpractice action are (1) a deviation or departure
from accepted practice, and (2) evidence that such departure was
a proximate cause of injury or damage." *Torres v. City of New
York*, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001). "However, a
prison cannot be required to meet the same standard of medical
care found in non-prison hospitals." *Rivera v. Fed. Bureau of
Prisons*, No. 08 Civ. 5590 (SAS), 2009 WL 585828, at *4 (S.D.N.Y.
Mar. 5, 2009). "Moreover, a prisoner has no right to the
treatment of his choice." *Id.*

The Court has previously held that "there are no facts
in the Complaint, as pled, that Dr. Sommer departed from any
accepted medical practice. Plaintiff's contentions that: (1)
other medical staff were unqualified to diagnose him, and (2)
Dr. Sommer's deferral of his treatment to others until late
January was the cause of the damage to his hand, is conclusory
and unsupported by any facts." *Id.* The Amended Complaint sets
forth no new allegation that would cure any of these defects
previously identified by the Court.

Even if Dr. Sommer was informed on January 11, 2010,
of Plaintiff's condition, Plaintiff's medical records contradict

18

any assertion that Dr. Sommer knew that Plaintiff exhibited any
symptoms on January 11 so severe that it constituted malpractice
to wait until January 15, 2010, to commence his treatment.
Plaintiff's records indicate that when Plaintiff was first
treated for his wound in mid-January, he repeatedly reported (to
medical staff both inside and outside the prison) that he had
only been suffering symptoms for a few days. See, e.g., Compl.
at Doc. 2-1, p. 19 of 47 (reflecting Plaintiff's statement that
symptoms began only 1-2 days prior, and that he did not appear
to be in acute distress), 24 of 47, 27 of 47; id. at Doc. 2, p.
28 of 58, 31 of 58, 33 of 58, 54 of 58; see also MTD Op. at 37.
Moreover, there is no allegation in the Amended Complaint, or
any indication in Plaintiff's medical records, that the passage
of time between January 11 and January 15, 2010, proximately
caused the damage to Plaintiff's hand. Indeed, as set forth
above, Plaintiff's wound was promptly and thoroughly treated
over the next several months in numerous federal and external
facilities.

    Plaintiff also contends that Dr. Sommer committed
malpractice due to her alleged "delay in treatment" of the
spider bite on Plaintiff's hand, and supposed "prescription of
the wrong medication." Opp. Br. at 4. The new allegation in the

Amended Complaint, which asserts that Dr. Sommer supposedly

became aware of Plaintiff's hand injury on January 11, 2010,

rather than on January 15, 2010, is insufficient to state either

a *Bivens* claim for deliberate indifference to Plaintiff's

medical needs, or a medical malpractice tort claim. With respect

to Plaintiff's allegation that Dr. Sommer prescribed the "wrong

medication," the Court has already ruled on that contention in

dismissing Plaintiff's original complaint, where that allegation

appears. See Compl. at Doc. 2, p. 4 of 58, 6 of 58, 7 of 58. The

July 2, 2013 motion to dismiss opinion, determined that

Plaintiff's contention about his medication did not suffice to

state either a *Bivens* claim (MTD Op. at 28), or a tort claim for

medical malpractice (*id.* at 34-37). The Amended Complaint sets

forth no new factual allegation or theory with respect to this

claim and the Court will not revisit its previous decision on

this issue.

The Amended Complaint fails to state a tort claim

arising from the alleged delay in Plaintiff's treatment from

January 11, 2010, to January 15, 2010, for the same reasons

identified by the Court in its July 2, 2013 Opinion. See MTD Op.

at 33-37. If the Court construes the Amended Complaint as

asserting a tort claim, Plaintiff's allegations are construed as

asserting a claim for medical malpractice, because the allegations substantially relate to medical treatment. See, e.g., *La Russo v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 304 (S.D.N.Y. 2013), aff'd, 747 F.3d 90 (2d Cir. 2014) (under New York law, "[i]n determining whether an action sounds in medical malpractice or simple negligence, the critical question is the nature of the duty to the plaintiff which the defendant is alleged to have breached" and concluding that a negligence claim arising from the alleged conduct would be duplicative of the malpractice claim) (citations and internal quotation marks omitted); *Sweeney v. Presbyterian/Columbia Presbyterian Med. Ctr.*, 763 F. Supp. 50, 52 (S.D.N.Y. 1991) (discussing the difference, under New York law, between negligence and malpractice claims in a medical context, and noting that the New York Court of Appeals has held that "conduct which constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician is medical malpractice") (citations and internal quotation marks omitted).  In this case, the allegations relate to medical treatment and therefore the claim fails because the allegations fail to meet the burden of deliberate indifference.

**Plaintiff's Amended Complaint Fails to State a Tort Claim Under the FTCA**

21

To the extent the Amended Complaint is liberally construed to assert a tort claim against Dr. Sommer, notwithstanding the fact that the Amended Complaint does not identify any alleged tort or even reference the FTCA, any such claim is also dismissed for failure to state a claim.

First, the United States is substituted in place of Dr. Sommer as the defendant to Plaintiff's tort claim, if any. The only proper defendant to a tort claim under the FTCA is the United States. *E.g.*, *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991). To the extent a tort claim is based upon the conduct of a federal employee or official, the United States substitutes as defendant "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Fiore v. Medina*, No. 11 Civ. 2264 (RJS), 2012 WL 4767143, at *5 (S.D.N.Y. Sept. 27, 2012) (citation and internal quotation marks omitted); see also 28 U.S.C. § 2679(d)(1). "Moreover, an express petition for certification is not required and a brief on behalf of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment." *Fiore*, 2012 WL 4767143, at *5

22

(citation and internal alteration and quotation marks omitted)
(citing cases); see also *Cates v. Williams*, No. 08 Civ. 1529
(HB), 2009 WL 723021, at *5 (S.D.N.Y. Mar. 19, 2009) (same)
(citing *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d
709, 715-16 (2d Cir. 1994)); *Nwaokocha v. Sadowski*, 369 F. Supp.
2d 362, 376 (E.D.N.Y. 2005) (construing the United States'
request to be substituted as defendant as equivalent to
certification).

In this case, the Government's brief serves as a
petition to certify that Dr. Sommer was an employee acting
within the scope of her employment at the time of the incidents
alleged in the Amended Complaint. See *Fiore*, 2012 WL 4767143 at
*6. No allegation in the Amended Complaint states or suggests
otherwise. *Id.*; see also *Point-Dujour v. United States Postal
Serv.*, No. 02 Civ. 6840 (JCF), 2003 WL 1745290, at *3, n. 5
(S.D.N.Y. Mar. 31, 2003) (noting that because scope of
employment was undisputed, United States was proper defendant).
For these reasons, any tort claim asserted in the Amended
Complaint must be dismissed as to Dr. Sommer, and the United
States substituted as party defendant. *Id.*

23

Plaintiff appears to challenge the substitution of the United States for Dr. Sommer as party defendant, to the extent the Amended Complaint can be construed to assert a tort claim, on the grounds that such a substitution cannot be effected pursuant to Fed. R. Civ. P. 12(b)(6), and that "the court has not received a certificate and therefore cannot grant defendants' substitution request." Opp. Br. at 3. However, the FTCA itself provides for substitution by the United States as the only proper defendant to FTCA suits. See 28 U.S.C. §§ 2679(b), (d). Furthermore, the law is well settled that an express certification that a federal employee was acting within the scope of her employment is not required, and that a brief on that employee's behalf can serve as such a certification. See Dkt. No. 52 ("MTD AC") at 15-16; see also, e.g., *Logan v. Matveevskii*, 57 F. Supp.3d 234, 283-84 (S.D.N.Y. 2014); *Qian Jin Lin v. Anderson*, No. 12 Civ. 0451 (AJN), 2013 WL 3776249, at *3 (S.D.N.Y. July 18, 2013). Plaintiff does not challenge that, for the purposes of this matter, Dr. Sommer was acting within the scope of her employment as the clinical director of FI Otisville; indeed, Plaintiff's allegations rely on Dr. Sommer's supposed conduct in that capacity. The substitution of the United States as party defendant, therefore, is proper.

24

**Conclusion**

Based upon the conclusions set forth above, the Defendant's motion is granted and the Amended Complaint is dismissed.

It is so ordered.

New York, NY
August 23, 2016

ROBERT W. SWEET
U.S.D.J.